IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CARLA ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-948 (MN) |
| | ) | |
| ROBERT J. VALIHURA, JR., an individual, and MORTON VALIHURA & ZERBATO, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION**

Charles J. Brown, III, GELLERT SEITZ BUSENKELL & BROWN, LLC, Wilmington, DE – Attorney for Plaintiff

Eileen M. Ford, Stephanie Emmanuel-De Luna, MARKS, O'NEILL, O'BRIEN DOHERTY & KELLY, P.C., Wilmington, DE – Attorneys for Defendants

October 23, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendants' Motion for Summary Judgment (D.I. 40) on Plaintiff Carla Anderson's claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. For the following reasons, the Court will DENY Defendants' motion.

## I. BACKGROUND

The material facts of this case are largely undisputed. Plaintiff owns a condominium governed by the Le Parc Condominium Association ("the Association"), whose Code of Regulations ("the Code") establishes procedures for collecting unpaid assessments and related charges from owners. (D.I. 40-2 ¶¶ 1-5; D.I. 44 ¶¶ 1-5). In July 2022, the Association, represented by Defendants Robert J. Valihura, Jr. and Morton Valihura & Zerbato, LLC, filed an action against Plaintiff in the Delaware Justice of the Peace Court to collect unpaid assessments and fees. (D.I. 40-2 ¶¶ 6-7; D.I. 44 ¶¶ 6-7). Plaintiff did not answer the complaint in that action, and on April 18, 2023, the Justice of the Peace Court entered a default judgment ("the Judgment") against her for $7,941.38, which consisted of $5,335 in owed principal, $50 in court costs, $144.70 in prejudgment interest, and $2,411.68 in attorneys' fees. (D.I. 40-2 ¶¶ 8-9; D.I. 41-1 at 85, 88). The Judgment also provided for postjudgment interest at an annual rate of 18%. (D.I. 41-1 at 85).

On May 4, 2023, the Judgment was transferred to the Delaware Superior Court for execution. (*Id.* at 88). The Association thereafter sought a writ of *fieri facias* and, on July 13, 2023, filed a praecipe for a writ of *venditioni exponas* directing the sale of Plaintiff's condominium. (D.I. 40-2 ¶¶ 11-12; D.I. 44 ¶¶ 11-12). The proposed writ accompanying the praecipe represented to the Superior Court that the sale was necessary to satisfy a debt of $14,212.64 "according to the judgment" entered by the Justice of the Peace Court. (D.I. 41-1 at 91). That amount included $7,823.05 in attorneys' fees, notwithstanding that the Judgment had awarded only $2,411.68 in such fees. (*Id.* at 85, 88, 91). On August 11, 2023, Defendants mailed

Plaintiff notice that her condominium was scheduled for a Sheriff's sale on September 12, 2023, at 9:00 a.m. (D.I. 41-1 at 95-96, 106-07). The notice advised that anyone seeking to satisfy the "obligation prior to the scheduled foreclosure sale" should request an updated payoff amount. (*Id.* at 107). Plaintiff sought such an amount. (D.I. 40-2 ¶ 14; D.I. 44 ¶ 14).

On August 17, 2023, Defendants sent Plaintiff a payoff letter noting that $5,234.73 in "Post-judgment attorney's fees and expenses through today," was due, making the total required payoff amount $14,381.08.[1] (D.I. 41-2 at 5-6). The letter directed Plaintiff to pay that amount by August 25, 2023, "to bring the account current, stay the Sheriffs sale, satisfy the [Justice of the Peace] and Superior Court judgments and avoid additional fees, costs and expenses." (*Id.* at 6). Defendants warned that, absent "payment in full," they had "been authorized to proceed with the Sheriff's Sale." (*Id.*).

On September 11, 2023, Defendants sent Plaintiff's counsel an updated payoff letter listing $12,750.62 in "Post-judgment attorney's fees and expenses through today," ultimately demanding payment of $22,686.44 "by the close of business on September 11, 2023" to "stay the Sheriff's sale" and "satisfy the [Justice of the Peace] and Superior Court judgments," among other things. (D.I. 41-3 at 6-7). Plaintiff paid the demanded amount "to stay the September 12, 2023 [S]heriff's sale," and the Association cancelled the sale and satisfied the Judgment. (*Id.* at 9, 17-19).

Plaintiff subsequently brought this action, alleging that Defendants violated the FDCPA by demanding unauthorized attorneys' fees as a condition of stopping the Sheriff's sale. (D.I. 1). Defendants move for summary judgment, arguing that the fees were authorized by the

---

[1] The writ of *venditioni exponas*, which was based upon Defendants' representations in the praecipe, sought satisfaction of a debt of $14,212.64 only. (D.I. 41-1 at 91).

Association's governing documents and Delaware law, that their communications were not abusive, and that Plaintiff's action is barred by the *Rooker-Feldman* doctrine. (D.I. 40, 41).

## II. LEGAL STANDARD

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 & n.10 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

"Material" facts are those that "could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The non-moving party's evidence "must amount to more than a scintilla, but may

amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). "If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (cleaned up).

### B. <u>The Fair Debt Collection Practices Act</u>

To prevail on her FDCPA claim, Plaintiff must ultimately establish that she is a consumer, the Defendants are debt collectors, the challenged conduct involves an attempt to collect a debt, and that Defendants violated a provision of the FDCPA in attempting to collect that debt. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

Section 1692e of the FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including false representations concerning "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e, (2)(A). Courts evaluate alleged violations from the perspective of the "least sophisticated debtor," which is an objective standard intended to protect consumers while preserving a basic level of reasonableness. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418-19 (3d Cir. 2015). A false representation is actionable only if material, meaning it must be "capable of influencing the decision of the least sophisticated debtor." *Id.* at 421.

Section 1692d of the FDCPA separately prohibits conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

15 U.S.C. § 1692d. The statute identifies several prohibited practices, including threats of violence, abusive language, and repeated telephone calls intended to harass, but expressly provides that those examples do not limit its general prohibition. *Id.*

## III. DISCUSSION

The parties' principal disagreement concerns whether Defendants' demand for postjudgment attorneys' fees as a condition of stopping execution on the Judgment violated the FDCPA.

### A. *Rooker-Feldman*

Defendants first argue that Plaintiff's FDCPA claim constitutes an impermissible collateral attack on the underlying state court proceedings. (D.I. 41 at 18-20; D.I. 46 at 9-10). The Court disagrees.

The *Rooker-Feldman* doctrine bars federal district courts from reviewing and rejecting state court judgments at the request of parties claiming injuries arising from those judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). For the doctrine to apply, a plaintiff must complain of an injury caused by a state court judgment and invite the federal court to review and reject that judgment. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 168 (3d Cir. 2010) ("[T]he injury must be caused by the state-court judgment and . . . the plaintiff must invite review and rejection of that judgment.").

Here, Plaintiff does not challenge the Justice of the Peace Court's Judgment or the attorneys' fees awarded therein. Rather, she challenges Defendants' subsequent representations that additional, unadjudicated attorneys' fees had to be paid to satisfy that Judgment and prevent the Sheriff's sale executing it. (D.I. 1 ¶¶ 15-18; D.I. 41-2 at 6; D.I. 41-3 at 7). Defendants rely on *Todd v. United States Bank National Association*, 685 F. App'x 103 (3d Cir. 2017), but in *Todd*, the underlying judgments expressly authorized attorneys' fees and interest through the Sheriff's

sale, and the state court subsequently reissued writs reflecting additional accrued amounts. *Id.* at 105-06.[2] Thus, the plaintiffs' challenge to those amounts effectively challenged the underlying state court judgments. Here, neither state court adjudicated the additional postjudgment fees Defendants sought. The Superior Court's September 11 order denying Plaintiff's motion to stay the Sheriff's sale addressed the applicable stay factors, not whether those fees – which were not presented to it[3] – were owed. (D.I. 41-3 at 2-5). Because Plaintiff's alleged injury arises from Defendants' collection communications rather than the state court judgments at issue, the *Rooker-Feldman* doctrine does not bar her claim.

**B. <u>False or Misleading Representations Under Section 1692e</u>**

Defendants next argue that the payoff letters were not false, deceptive, or misleading under § 1692e because the additional attorneys' fees were authorized by the Association's Code and Delaware law. (D.I. 41 at 6-15). The Court is not persuaded.

---

[2] Even were the postjudgment fees authorized by way of the Superior Court's writ of execution, the *Rooker-Feldman* doctrine would not bar Plaintiff's claim given neither the $14,381.08 sought in Defendants' August 17, 2023 letter, D.I. 41-2 at 5-6, nor the $22,686.44 demanded in their September 11, 2023 letter, D.I. 41-3 at 6-7, were established by the writs' noted debt of $14,212.64, which itself was based upon Defendants' representation that attorneys' fees of $7,823.05 were "owed. . . according to the judgment of the Justice of the Peace Court of New Castle County, Civil Action Number JP13-22-007678." (D.I. 41-1 at 91). Contrary to Defendants' representation, that Judgment, as noted, explicitly provided for attorneys' fees in an amount of $2,411.86, with no allowance for ongoing fees to be incorporated into the Judgment. (D.I. 41-1 at 85, 88). Defendants' contrary interpretation would permit the amount enforceable through the Judgment to increase based on their own calculation of attorneys' fees, without any corresponding judicial determination – essentially converting the Judgment into a blank check.

[3] On the record before this Court, neither Defendants' letter to the Justice of the Peace Court opposing Plaintiff's motion to vacate the Judgment nor their letter to the Superior Court opposing Plaintiff's motion to stay the Sheriff's sale disclosed the amount of postjudgment attorneys' fees Defendants sought to collect from Plaintiff. (D.I. 41-2 at 17-21, 23-24). Neither court's subsequent denial of those motions can therefore be understood as adjudicating, much less approving, the additional fees demanded in Defendants' payoff letters.

The Third Circuit has recognized that representing fees as presently owed may violate the § 1692e of the FDCPA where the collector has not established a right to collect them. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245-46 (3d Cir. 2014) ("If the amount actually owed as of that date was less than the amount listed, then, construing the facts in the light most favorable to McLaughlin . . . McLaughlin has stated a claim that the Letter misrepresents the amount of the debt in violation of § 1692e(2)."); *see also Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175-76 (3d Cir. 2015).

Here, the Justice of the Peace Court entered judgment for $7,941.38, expressly including $2,411.68 in attorneys' fees. (D.I. 41-1 at 85, 88). Defendants nevertheless represented that Plaintiff had to pay $14,381.08, and later $22,686.44, to "satisfy the [Justice of the Peace Court] and Superior Court judgments" and prevent the Sheriff's sale. (D.I. 41-2 at 6; D.I. 41-3 at 7). Defendants argue that the additional fees were authorized by the Code and 25 Del. C. § 81-316, which permit recovery of reasonable attorneys' fees incurred in collecting unpaid assessments. (D.I. 41 at 8-11). But the authority to recover additional fees did not necessarily permit Defendants to require their payment as a condition of stopping execution on the Judgment. *See Kaymark*, 783 F.3d at 175-76 ("[D]emanding fees in the collection of debts in a way contrary to the underlying agreement is actionable under the FDCPA."); *see also McNair v. Maxwell & Morgan PC*, 893 F.3d 680, 683-84 (9th Cir. 2018) (holding that including unapproved postjudgment attorneys' fees in a writ of execution misrepresented the legal status of the debt).

Indeed, the Association's Code expressly distinguishes between attorneys' fees awarded in litigation and expenses incurred collecting a judgment. It provides that litigation fees "shall be included in any judgment, including any default judgment," while expenses incurred "to collect on any judgment" are treated as "additional assessments." (D.I. 41-1 at 45-46). Under the Code,

then, additional assessments, even if owed, do not automatically become part of a previously entered judgment. The Delaware Unit Property Act similarly provides that assessments may be "enforced by an action at law," and that the resulting judgment "shall be enforceable in the same manner as is otherwise provided by law." 25 Del. C. § 2234. Section 2236 separately addresses unpaid common expense assessments that have "not been reduced to lien pursuant to § 2234," providing for their payment from execution sale proceeds "after payment of all other claims" required by law. *Id.* § 2236. Thus, the statutory scheme distinguishes between enforcing amounts reduced to judgment and recovering additional assessments that have not been included in that judgment.

Section 81-316 likewise provides that reasonable collection fees are "enforceable in the same manner as unpaid assessments," 25 Del. C. § 81-316(a), that judgments under that section "must include costs and reasonable attorney's fees," *id.* § 81-316(g), and that an association's lien may be executed upon through "other lawful procedures provided for in the declaration," *id.* § 81-316(j)(1). Although § 81-316 provides an independent basis for enforcing assessment liens, Defendants have not established that the additional fees could be enforced through execution on the existing Justice of the Peace Court Judgment. Nor have they identified a separate proceeding to enforce an assessment lien for those fees. Thus, their potential entitlement to recover the demanded fees does not establish that payment of them could be required to stop the pending execution sale.

Defendants also rely on the Association's Collection Policy, which provides that, before the release of a lien, foreclosure documents, or dismissal of an action, "all assessments, late charges, interest, and costs of collection, including attorneys' fees, must be paid in full." (D.I. 41 at 9; D.I. 41-1 at 51). That provision, however, does not establish that unadjudicated fees may be

collected through execution on an existing judgment. As the Ninth Circuit recognized in *McNair*, the potential recoverability of additional attorneys' fees does not necessarily make them presently enforceable in the manner represented by a debt collector. *See* 893 F.3d at 683-84.

Defendants' own representations to the Superior Court reinforce this distinction. In an August 31, 2023 letter, Valihura described the Judgment as "the basis for the foreclosure action in this Court" and represented that, if the Justice of the Peace Court vacated the Judgment, counsel "will act to stay the Sheriff's Sale." (D.I. 41-2 at 23-24). Those representations confirm that the pending Sheriff's sale was proceeding under the Judgment alone, and that Defendants understood as much.

Defendants' arguments concerning the reasonableness and itemization of the additionally sought fees do not change this conclusion. (D.I. 41 at 11-17; D.I. 46 at 3-9). Even assuming the fees were reasonably incurred, that does not resolve whether Defendants could demand them as a condition of stopping the Sheriff's sale. Nor does Plaintiff's claim depend on whether Defendants were required to provide detailed billing records. The relevant question is whether Defendants misrepresented the legal status of the additional fees by representing that payment was necessary to satisfy the judgments and prevent execution. The Court concludes that neither the Code nor Delaware law authorized Defendants to require payment of attorneys' fees above the Judgments' specified $2,411.68 as a condition of stopping execution on the Judgment, and will therefore deny summary judgment on Plaintiff's § 1692e claim.

### C. Harassing, Oppressive, or Abusive Conduct Under Section 1692d

Defendants also argue that the challenged communications were not harassing, oppressive, or abusive because Plaintiff requested the payoff letters and the Sheriff's sale was a lawful means of enforcing the Judgment. (D.I. 41 at 15-16; D.I. 46 at 6-7). The Court disagrees that these circumstances foreclose liability as a matter of law.

Here, the September 11 letter demanded $22,686.44 – nearly three times the amount of the Judgment – by the close of business that same day, under threat of a Sheriff's sale of Plaintiff's condominium scheduled for 9:00 a.m. the following morning. (D.I. 41-3 at 6-7). Although the Sheriff's sale itself was a lawful means of enforcing the Judgment, that does not necessarily establish that Defendants' conduct in demanding additional, unadjudicated fees of more than $12,000 in order to stay said sale, while recognizing its only basis was the Judgment, was not oppressive. (D.I. 41-2 at 23-24 (affirming that counsel would act to stay the sale if the Judgment was vacated)). Viewing the circumstances in Plaintiff's favor, a reasonable jury could certainly conclude that conditioning cancellation of an imminent Sheriff's sale on immediate payment of those fees was conduct whose natural consequence was to oppress Plaintiff. The Court will therefore deny summary judgment on Plaintiff's § 1692d claim.

## IV. CONCLUSION

For the above reasons, the Court will DENY Defendants' motion for summary judgment. (D.I. 40). An appropriate Order will be entered.